IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARTIN E. O'BOYLE,

    Plaintiff,

vs.                                      Case No.: 50 2010 CA 012701 XXXX MB

SOUTH JERSEY PUBLISHING
COMPANY f/k/a ABARACORP,
d/b/a THE PRESS OF ATLANTIC
CITY and PRESSOFATLANTICCITY.COM

    Defendant.
_____/

### THE PRESS' MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE PLAINTIFF'S REQUEST FOR INTEREST AND ATTORNEYS' FEES FROM THE AMENDED COMPLAINT

Pursuant to Florida Rule of Civil Procedure 1.140(b)(6), Defendant South Jersey Publishing Company, publisher of *The Press of Atlantic City* and PressofAtlanticCity.com ("The Press"), moves to dismiss the Amended Complaint filed by Plaintiff Martin O'Boyle. The Amended Complaint purports to state a cause of action for defamation, but it fails to do so. The Press also moves, pursuant to Florida Rule of Civil Procedure 1.140(f), to strike Plaintiff's request in the Amended Complaint for recovery of interest and attorneys' fees. Grounds for these Motions are set forth below:

#### Background

1.    As its name suggests, *The Press of Atlantic City* is a newspaper of general circulation in southern New Jersey, including the greater Atlantic City metropolitan area. The Press also operates a related website, pressofatlanticcity.com. The website and newspaper are owned and operated by South Jersey Publishing Company.

2.    Mr. O'Boyle sues The Press over two newspaper articles that were published in the *The Press of Atlantic City* on March 15 and 16, 2010, which were part of the newspaper's

**Exhibit B**

Sunshine Week coverage.[1] Am. Compl. ¶ 5. Articles also appeared online. Mr. O'Boyle sues The Press for defamation.[2]

3. The March 15, 2010, article discussed, among other things, Mr. O'Boyle's hundreds of public records requests to the Borough of Longport and statements made by Mr. O'Boyle concerning those public records requests. Am. Compl. ¶ 12. Mr. O'Boyle spends a significant amount of time in Longport, where his wife owns an historic home.

4. The March 16, 2010, article primarily discussed efforts by a New Jersey state legislator to get more of New Jersey's public records online and briefly mentioned Mr. O'Boyle's activity in Longport as part of the story. Am. Compl. ¶¶ 5, 13-15.

5. The Amended Complaint fails to state a claim for defamation and should be dismissed.

## Argument

6. When considering a motion to dismiss, this Court must take the facts alleged in the Amended Complaint as true, and must draw all reasonable inferences in favor of Plaintiff. However, cases involving First Amendment rights are particularly suited for motions to dismiss. Pretrial disposition in First Amendment cases is especially appropriate "because of the chilling effect these cases have on freedom of speech." Stewart v. Sun-Sentinel Co., 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

### I. The Amended Complaint Must Be Dismissed Because the Statements Upon Which It Is Based Are Not Defamatory as a Matter of Law.

7. To state a cause of action for defamation, a plaintiff must allege the following elements: (1) a publication of and concerning plaintiff; (2) containing a false and defamatory

---

[1] "Sunshine Week is a national initiative to open a dialogue about the importance of open government and freedom of information." About Sunshine Week, http://www.sunshineweek.org/About.aspx, last visited on August 5, 2010.
[2] Plaintiff also repeatedly claims to have been cast in a false light. Am. Compl. ¶¶ 8, 9, 11-13. The Florida Supreme Court rejected recognition of the tort of false light in 2008, in a case in which Plaintiff's attorney was counsel of record. Jews for Jesus v. Rapp, 997 So. 2d 1098, 1114 (Fla. 2008).

2

statement of fact;[3] (3) that is not privileged; (4) that is published with fault amounting to at least negligence on the part of the publisher; and (5) damages. Thomas v. Jacksonville Television, Inc., 699 So. 2d 800, 803-04 (Fla. 1st DCA 1997).

8. A statement is defamatory which "exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment." Thomas, 699 So. 2d at 803 (quoting Cooper v. Miami Herald Publ'g Co., 31 So. 2d 382, 384 (Fla. 1947)). In other words, a defamatory statement is one that naturally and proximately injures a plaintiff. Byrd, 433 So. 2d at 595.

9. The proper method for determining if a statement is defamatory is the "common mind" test. E.g., Byrd, 433 So. 2d at 595. The words should not be interpreted by the Court "in their mildest or most grievous sense...." Loeb v. Geronemus, 66 So. 2d 241, 245 (Fla. 1953). "In other words, the statement should be considered in its natural sense without a forced or strained construction." Byrd, 433 So. 2d at 595.

10. Applying these basic principles of interpretation, the statements at issue fail to meet this stringent standard on the face of the Amended Complaint.

11. First, in Paragraph 11, Plaintiff claims that the March 15, 2010, article implies that Mr. O'Boyle is a "political operative" and that this term has an "extremely negative connotation" and "is a very highly charged pejorative term, which falsely characterizes the Plaintiff and places him in a false light."

---

[3] The courts play a "prominent function" in defamation cases by determining as a matter of law if the complained of statement is reasonably capable of defamatory meaning at an early stage in the litigation, such as on motions to dismiss. Byrd v. Hustler Magazine, Inc., 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citing Wolfson v. Kirk, 273 So. 2d 774, 778 (Fla. 4th DCA 1973).

3

12. Such a construction of the article, taken as a whole,[4] is strained. The term "political operative" appears in the sub-head to a long article about a variety of public records issues in which Mr. O'Boyle is not mentioned for some time. Am. Compl. Ex. A.[5] Moreover, being referred to as a "political operative" is not defamatory using the "common mind" test. Such a term merely refers to those engaged in politics. Surely it is not defamatory to describe someone's profession or lawful activities. It would be far from defamatory, for example, to call someone a doctor or lawyer and, similarly, it is not defamatory to refer to someone engaged in the political process as a political operative. Seropian v. Forman, 652 So. 2d 490, 495-96 (Fla. 4th DCA 1995) (accusing plaintiff of "influence peddling" is not defamatory). See also Greenbelt Co-op. Pub. Ass'n v. Bresler, 398 U.S. 6, 14 (1970) (holding that use of the word "blackmail" during a heated city council meeting to describe the negotiating position of the individual in question was protected rhetorical hyperbole); Fortson v. Colangelo, 434 F. Supp. 2d 1369 (S.D. Fla. 2006) (calling member of rival basketball team "thug," "thugged out," "a vacant lot," a "meaningless mass" and "gangstas or wankstas" is rhetorical hyperbole); Pullum v. Johnson, 647 So. 2d 254, 257 (Fla. 1st DCA 1994) (calling plaintiff a *drug pusher* amounted to rhetorical hyperbole, which negated impression that defendant was stating actual facts about the plaintiff); DeMoya v. Walsh, 441 So. 2d 1120, 1120 (Fla. 3d DCA 1983) (calling someone a "'raving maniac' and 'raving idiot' … may have been personally insulting, but did not constitute actionable slander"). The Court should dismiss this action with respect to any claims based on the "political operative" language in the sub-head of the article, which is language that on its face is not defamatory.

---

[4] The articles are attached as Exhibits to the Complaint, per the Court's order on Defendant's initial motion to dismiss, so that the Court can conduct the proper inquiry into whether the statements are capable of defamatory meaning as a matter of law.

[5] Taken as a whole, the article does not even refer to Mr. O'Boyle as a political operative.

4

13.     Second, it is not defamatory for someone to say that he is going to exercise his full legal rights, give public officials a hard time, and expect public officials to fulfill their legal duties. The statement "'[t]hat's about as close to busting (chops) as you can get. I'm going to do it solely for a point,' Longport homeowner Martin O'Boyle says of his plans to file all of his OPRA requests in one form, giving the borough seven days to comply" merely expresses those sentiments, albeit in Mr. O'Boyle's own colorful language. Am. Compl ¶ 12(a); see also Am.Compl. ¶ 12(h)-(i), Ex. A. This too falls far short of being defamatory.

14.     Next, the following statements also fail to meet that legal standard of having a defamatory meaning on their face:

- "But finding something specific may not be the goal of some public-document seekers. For Martin O'Boyle, it's about bulk." Am. Compl. ¶ 12(b);

- "he (referring to Plaintiff) criticized the Borough for its inability to properly respond to his requests" Am. Compl. ¶ 12(c);

- "Longport officials say O'Boyle is using OPRA to intimidate and harass employees." Am. Compl. ¶ 12(e);

- "O'Boyle eventually admitted that not all of his requests are for vital information." Am. Compl. ¶ 12(f);

- "O'Boyle's dissatisfaction with the Borough's response to his requests has led to new plans for him to file all of his requests in one OPRA form, technically giving Longport officials just seven days to comply with dozens of requests under the law." Am. Compl. ¶ 12(g); and

- "If they're doing things wrong and their conduct is affecting you and/or your family, why can't you do it forever?" Am. Compl. ¶ 12(j).

Again, Mr. O'Boyle is entitled to employ whatever legal methods he chooses – including making hundreds of records requests – to seek government information. Describing such actions cannot be defamatory.

15.     Likewise, the statement in Paragraph 12(d) that "the O'Boyle family was cited for zoning violations" is also not defamatory as a matter of law. See Jordan v. City of Kansas City,

5

972 S.W.2d 319, 324 (Mo. Ct. App. 1998) (holding that summons for property violations which informed the plaintiff of ordinance violations were not defamatory).

16. Finally with respect to the defamatory meaning analysis, Mr. O'Boyle also takes issue with the description that he is on a "crusade to 'bust chops' in Longport Borough Hall." Am. Compl. ¶ 13. Like the term "political operative," he takes issue with use of the word "crusade" and attempts to define it in an extreme manner. Am. Compl. ¶ 15. A crusade, besides its use as a historical reference, simply means "[a] vigorous concerted movement for a cause or against an abuse." The American Heritage Collegiate Dictionary 342 (4th ed. 2007). Making hundreds of public records requests is certainly a vigorous and concerted movement to push for open government and, thus, a type of crusade. This is hardly a defamatory statement.

17. The statements Plaintiff based his Amended Complaint upon do not come close to exposing Plaintiff to distrust, hatred, contempt, ridicule or obloquy and cannot be construed by the common mind as being defamatory. As a matter of law, these statements cannot be deemed defamatory.

## II. Plaintiff's Requests for Interest and Attorneys' Fees Should Be Stricken

18. Florida Rule of Civil Procedure 1.140(f) allows a party to move to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fla. R. Civ. P. 1.140(f). A matter may be stricken from a pleading if it is "wholly irrelevant" and "can have no bearing on the equities and no influence on the decision." Rice-Lamar v. City of Ft. Lauderdale, 853 So. 2d 1125 (Fla. 4th DCA 2003) (citations omitted).

19. A motion to strike is the proper method for challenging improperly pled items of damages, such as interest and attorneys' fees. Augustine v. S. Bell Tel. & Tel. Co., 91 So. 2d 320, 323 (Fla. 1956); William v. Bay Hosp. Inc., 471 So. 2d 626, 630 (Fla. 1st DCA 1985).

20. Recovery of attorneys' fees is proper only when there is a statutory or contractual basis for such recovery. <u>Stockman v. Downs</u>, 573 So. 2d 835, 837 (Fla. 1991).

21. In this case, however, there is no statutory or contractual basis for recovery of attorneys' fees and the request for fees contained in the prayer for relief should be stricken.

22. Likewise, there is no basis for recovery of interest and that request should also be stricken.

WHEREFORE, The Press respectfully requests that this Court dismiss the Amended Complaint. The Press also respectfully requests that this Court strike Mr. O'Boyle's request for interest and attorneys' fees in the Amended Complaint and grant The Press such other relief as the Court deems proper.

Respectfully submitted,

THOMAS & LOCICERO PL

_/s/ P. R. McAdoo_

Carol Jean LoCicero
  Florida Bar No. 603030
Paul R. McAdoo
  Florida Bar No. 0036219
400 N. Ashley Drive, Suite 1100
Tampa, FL 33602
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
pmcadoo@tlolawfirm.com

and

Deanna K. Shullman
  Florida Bar No. 0514462
8461 Lake Worth Road, Suite 242
Lake Worth, FL 33467
Telephone: (561) 340-1433
dshullman@tlolawfirm.com

Attorneys for The Press

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on this 20th day of December, 2010, via ☐ E-Mail; ☒ U.S. Mail; ☐ Facsimile; ☐ Overnight Delivery to Barry M. Silver, Esq., 1200 S. Rogers Circle, Suite B, Boca Raton, FL 33487.

*[signature]*
Attorney